IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.                             No. 4:02CR00178-03 JMM
                               [No. 4:07CV00147 JMM]

LATOYA ROSE HOURSTON                                                                   DEFENDANT

## ORDER

### BACKGROUND

On February 21, 2003, a jury returned verdicts of guilty against Hourston to Count 1, aiding and abetting armed bank robbery, and Count 3, giving a false statement.[1] The jury also returned a verdict of not guilty to Count 2 which charged Hourston with aiding and abetting the use of a firearm during a crime of violence. Judgment was entered on the docket on May 22, 2003, sentencing Hourston to 87 months imprisonment on Count 1 and 60 months imprisonment on Count 3 to run concurrent with each other to be followed by a 3-year period of supervised release.

In her appeal, Hourston argued that she should not have received a 5-level sentencing enhancement for the possession of the firearm during a robbery, specifically arguing "that she should not have received the enhancement because she did not possess a gun, nor was she present during the robbery; the jury acquitted her of a related weapon charge; and there was no credible testimony

---

[1] Hourston's two co-defendants pleaded guilty to Count 1.

justifying the enhancement."[2]  The Eighth Circuit Court of Appeals affirmed the sentence on May 5, 2004, concluding that the Court did not err in assessing the firearm enhancement.  The appellate court's holding on that issue is set out below:

> After careful review, we conclude the court did not err in assessing the firearm enhancement.  See United States v. Martinez, 339 F.3d 759, 761 (8th Cir. 2003) (standard of review).  First, according to the trial testimony of Ms. Hourston's codefendant, which the sentencing court was entitled to credit, Ms. Hourston obtained the gun for the robbery; thus it would have been reasonably foreseeable to Ms. Hourston that the gun would be displayed during the robbery.  See U.S.S.G. §§ 1B1.3(a) (in case of jointly undertaken criminal activity, specific offense characteristics are determined based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," whether or not charged as conspiracy, that occurred during commission of offense of conviction, or in preparation for offense); United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002) (sentencing judge's determination of witness credibility is virtually unreviewable on appeal); United States v. Cowan, 196 F.3d 646, 649-50 (6th Cir. 1999) (brandishing-firearm enhancement appropriate where defendant gave gun to juvenile to commit sting, as it was foreseeable that person borrowing gun to commit robbery planned to brandish, display, or possess the gun during the robbery), *cert. denied*, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000).  Second, the jury's acquittal of Ms. Hourston on the weapon charge was not dispositive.  See United States v. Watts, 519 U.S. 148, 149, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (sentencing court may consider conduct of which defendant has been acquitted, so long as that conduct has been proved by preponderance of evidence); United States v. Wallace, 212 F.3d 1000, 100 5 (7th Cir. 2000) (firearm enhancement appropriate where defendant, who was convicted of aiding and abetting armed bank robbery, was acquitted of separate charge that he used firearm during crime of violence).

Id.

On January 24, 2005, the United States Supreme Court granted Hourston's petition for a writ of *certiorari*, vacated the judgment and remanded the case to the Eighth Circuit for further consideration in light of United States v. Booker, 125 S.Ct. 738 (2005).[3]  By opinion filed on June

---

[2]United States v. Hourston, 97 Fed.Appx. 53, 54, 2004 WL 960034 *1 (8th Cir 2004).

[3]Hourston v. United States, 543 U.S. 1106, 125 S.Ct. 989, 160 L.Ed.2d 1026 (2005).

10, 2005, the appellate court concluded that Hourston did not preserve a Booker issue, she "was not entitled to plain-error relief because she cannot show that her substantial rights were affected," Booker did not affect the previous opinion, reinstated the prior opinion and again affirmed the sentence imposed.[4] Hourston's petitions for rehearing *en banc* and for rehearing by the panel were denied on August 16, 2005. The mandate was filed in this Court on September 20, 2005. The United States Supreme Court denied *certiorari* on February 27, 2006,[5] and the notice on that order was filed in this Court on April 17, 2006.

## ARGUMENT

On March 1, 2007, Hourston filed a motion, pursuant to 28 U.S.C. §2255, to vacate, set aside or correct sentence.[6] As grounds for relief, she claims ineffective assistance of counsel, double jeopardy due to the firearm enhancement on the acquitted charge, multiplicity in violation of her Fifth Amendment rights by the firearm enhancement and using that as an element of the offense in a separate charge, plain error in the sentence, and ineffective assistance of counsel in failing to raise the refusal for downward departure and mitigating role on appeal. Hourston specifically requests removal of the 5-level enhancement and a resentencing.

She asserts that her counsel failed to offer arguments to the aggravating factor – the firearm enhancement – that caused her to have a greater sentence than determined by the jury who tried her and the fact that her firearm enhancement increased her sentence was unconstitutional under United

---

[4]United States v. Hourston, 134 Fed.Appx. 108, 2005 WL 1368046 (8th Cir. 2005).

[5]Hourston v. United States, 126 S.Ct. 1448, 164 L.Ed.2d 146 (2006).

[6]In her motion, Hourston noted that she was placing her §2255 motion into the prison mail receptacle on February 24, 2007, thus timely filing within the one-year limitations period.

States v. Booker, 543 U.S. 220, 268, 125 S.Ct. 738, 769 (2005), should have been raised at trial and during sentencing. While acknowledging that the credibility of a witness is virtually unreviewable on appeal, Hourston nevertheless argues that the credibility of the witness had already been determined by the jury when she was acquitted of any firearm charge and so the jury did not find the facts upon which the enhancement was based. She complains that her counsel should have fought the enhancement prior to sentencing rather than just taking the issue up on appeal.

Hourston continues that her counsel should have raised that, although she was a minor participant, a more culpable co-defendant made statements without any physical evidence to incriminate her and the gun enhancement eliminated her chance to receive a reduction in her sentence for participation in the Residential Drug treatment program and will follow her out into the community after her release. She also asserts that her counsel should have suggested that Hourston obtain a plea agreement so that, if she had taken a plea, her sentence would have been significantly different. Hourston further contends that her counsel should have requested statements and reports of government witnesses under the Jencks Act which would have allowed Hourston to make a better decision on whether to go to trial.

She argues that the firearm enhancement falls under the double jeopardy clause and was based only on the testimony of a co-defendant. Hourston alleges her counsel failed to raise the Jencks issue to show that the government planned on using the co-defendant's false testimony which could not constitute a preponderance of the evidence.

While Hourston raised the issue of the firearm enhancement as being double jeopardy in the context of the ineffective assistance of counsel claim, she also asserts it as a separate claim. Hourston argues that the testimony of only one co-defendant without further testimony or physical

evidence cannot be sustained as a preponderance of evidence as the jury's choice to eliminate that charge was totally ignored resulting in a clear case of double jeopardy.

For her third ground, Hourston asserts that adding a firearm charge onto the aiding and abetting charge bank robbery is multiplicitous in violation of the Fifth Amendment since the charge of gun possession is already implied with a bank robbery where a weapon would be used.

Hourston contends that her sentence was given in plain error as the jury found that she was not guilty so the preponderance of the evidence was not sufficient to secure a conviction yet the Court was allowed to render the offense as guilty and enhance her sentence. She argues that the government failed to prove that the gun was purchased by her and so the charge was only supported by hearsay.

In her final ground for relief, Hourston argues that she should have been awarded a downward departure for a minor role and the only reason she received such an excessive sentence was because she exercised her right to go to trial. She states that the very reason she sought to go to trial was because she was such a minor participant and that her absence of participation in the actual offense would not make her as culpable as doing the offense outright. Hourston contends that although the Court felt that her loaning two ex-cons her sister's car made her an equal partner in the crime, the jury found her not guilty of the firearm charge and there is no evidence to show that she supplied the weapon as her co-defendant's rendition of the facts was highly suspicious. She continues that she was a first time offender, she was not in the bank, and she did not drive the "get-away" car although she was found to have money that was taken from the offense so that a minor role would have been a four level decrease. Hourston complains that the Court failed to review her

true role and her counsel failed to object to the presentence report not crediting her with a role reduction.

On May 24th,[7] the government filed a response in opposition to the claims raised by Hourston. To the claim that her counsel provided ineffective assistance in negligently failing to preserve a basis for a <u>Booker</u> appeal, the government points out that the decision in <u>Booker</u> was not rendered until January 12, 2005, approximately eighteen months following the imposition of Hourston's sentence so her counsel could not have known of or recognized the necessity of laying the framework for an appeal based of the law announced in <u>Booker</u>. It continues that Hourston has failed to offer any reasoning as to how the lack of framework was "seriously deficient" and "prejudiced" her. As to Hourston's argument that counsel was also ineffective in failing to counter the credibility of the witness which the Court relied upon in applying the wrongful enhancement, the government asserts that Hourston is in essence attacking the firearm enhancement and sentencing guidelines claims are not cognizable on collateral review. The government states that, even if the Court were to find this claim to be cognizable, Hourston has failed to show that her counsel was "seriously deficient" and "prejudiced" her. It points to Hourston's acknowledgment that the Court had the ability to judge the credibility of the witness on which the firearm enhancement was based and, pursuant to the Jencks Act, the government is not required to provide defense counsel with a copy of the testimony of a witness until after the witness testifies.

Turning to the claim the firearm enhancement constituted double jeopardy in violation of the Fifth Amendment, the government points out that the Eighth Circuit addressed this same issue on

---

[7] The Honorable George Howard, Jr., died on April 21, 2007. The case was assigned to the undersigned on April 27, 2007.

appeal and found no error. It asserts that the Court found the witness's testimony as to the firearm to be credible and utilized that as a basis for enhancing the sentence as intended by the Congress for defendants who use a firearm during a robbery. In addition, the government counters that it did not engage in vindictive prosecution and the Court did not unconstitutionally sentence Hourston to a "cruel and unusual sentence."

The government argues that Hourston's assertion in her plain error claim that the witness who provided the firearm evidence was not credible and was not sufficient to constitute a preponderance of the evidence is not legally sound. It further asserts Hourston cannot prove that she would have received a more favorable sentence but for the alleged error because she has failed to show that she would have been acquitted aside from any possible error the Court may find.

Finally, the government contends that Hourston's downward departure argument is not cognizable on collateral review.

## TRANSCRIPT EXCERPTS

Pretrial proceedings with counsel and Hourston were held in chambers on February 20, 2003, before jury selection. The June 26, 2003 transcript of that conference provides, in relevant part, at page 10, line19 through page 13, line 7:

MS. DUKE: Your Honor, there was one other thing that I would like to have on the record, and that is, given the events that have taken place this week with the testing positive and things of that nature, I wanted to make the defendant aware of the plea offer that was extended. I know Ms. Byrd has conveyed that to her previously, but just for the benefit of the record and for all the parties so the defendant is aware that there was a plea offer extended, and so that she can make a knowing,

voluntary choice at this point in time whether to accept that plea offer, I would appreciate the court letting me put that on the record at this point.

THE COURT: What is your position regarding that request?

MS. BYRD: I don't object to that, Your Honor.

THE COURT: Well, what is the unfair prejudice if we deny it?

MS. DUKE: Your Honor, in the event of a conviction, if Ms. Hourston were to challenge her conviction on some basis, say, for ineffective assistance of counsel in that she was impaired at the time of plea negotiations and did not have a full awareness of the plea offer that was extended that she has refused.

THE COURT: I'm somewhat concerned about this. Let me ask. Are you aware of the offer the government made?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What is your understanding?

THE DEFENDANT: That I will take, I think the first count bank robbery, and then aiding and abetting, and then the only thing I remember is that my offer is like between five and half years to six and a half years. Am I correct on that?

MS. DUKE: That would be the guideline range, Your Honor.

THE COURT: So this is part of the offer? So what she has said is consistent with the understanding of the offer that you made?

MS. DUKE: That's correct, Your Honor, but in the event of a conviction the penalty would increase substantially, actually probably double given the fact that there is a 924(c) charge involved.

MS. BYRD: That is the weapon charge. Would you tell her what the weapon charge is.

MS. DUKE: The weapon charge involved is under 18 United States Code Section 924(c) for the use and brandishment of a firearm during a commission of a crime of violence, that being bank robbery. Under the statute that offense carries a mandatory consecutive term of seven years imprisonment that would be imposed on the back end of her conviction for the bank robbery, assuming she were convicted on that charge.

THE COURT: Any comments from either defendant or defense counsel?

MS. BYRD: So to make sure she understands that.

THE DEFENDANT: I just didn't know that – well, I don't know. I'm sorry, I don't understand. I thought the plea bargain was that –

THE COURT: I'll permit you all to step out and communicate if you want to.

THE DEFENDANT: But I still refuse.

THE COURT: You still refuse? You want a trial?

THE DEFENDANT: Yes, Your Honor.

MS. DUKE: That's sufficient, thank you.

The June 26, 2003 transcript of the May 20, 2003 sentencing contains the following excerpt from page 2, line 13 through page 8, line 6:

THE COURT: Now, I recognize that you have filed an objection to the five level increase. What is your position regarding that at this time?

MS. BYRD: Well, one, Your Honor, is I understand from the case law that the government has cited in their objection to the initial report, the Watts case and some subsequent cases, that the issue of enhancement is not that it's a conflict or inconsistent if she was acquitted, but that at

sentence the burden of proof is lower, and preponderance of evidence the court can look at in making that enhancement.

In this case, it's a five point enhancement, and it's our position, Your Honor, that in light of that, if the court has the authority to determine that enhancement based upon preponderance of the evidence, we think at least that the trial of this matter that there was some serious questions as to the credibility of Mr. Todrick Taylor, who was a co-defendant and who also has entered a plea agreement with the government, and that the government also is relying upon the sentencing hearing of Bobby Harris, who also was a co-defendant, and at that hearing, Your Honor, he affirmed the government's recitation of what the evidence would show.

One of our positions is that if that is the evidence the government is relying upon, we think that Taylor has credibility issues, but also as far as Harris, one, that was not affirmative testimony, and I recognize that he did affirm that testimony before this court as to what the evidence would show. But I'm sure the government will correct me, but I understand that the government has filed a motion relative to Mr. Harris on him being tried, if I'm not mistaken, on the weapons issue, that there is a pending motion regarding him being tried, and I'm not sure to what extent his sentencing, the testimony in his sentencing hearing is applicable if the government may proceed to trial against Mr. Harris on the weapons charge. Because it's also his testimony that is being used in the sentencing report to determine that she should get this enhancement. That's part of what the government is establishing in its preponderance of evidence, and we think that there is some question about that testimony and what he would or would not say, especially if he may be going to trial.

THE COURT: Mr. Harris?

MR. HARRIS: Judge, the position of the United States is that Ms. Hourston was convicted of Count One, which charges that she aided and abetted a bank robbery in which a firearm was brandished or used to assault a person. That's what she was convicted of was a bank robbery in which the gun was used. She is getting a five level enhancement of aiding and abetting a bank robbery where a weapon was used to assault a teller.

Co-defendant Todrick Taylor got the five level enhancement, co-defendant Bobby Joe Harris got the enhancement. Under the guideline they were supposed to get it and she should too. She should get the same enhancement as the two people that brandished the firearm as aiding and abetting.

The case of United States v. Wallace which is a Seventh Circuit case, it's almost on all fours for the aiding and abetting a bank robbery but he was acquitted of the actual underlying offense.

THE COURT: Now, the two associates testified that she supplied the gun and the vehicle, right?

MR. HARRIS: I believe Mr. Taylor did. Todrick Taylor testified that she – they got the gun from her. At trial he testified to that and he was subject to cross examination. Co-defendant Bobby Joe Harris did not testify, because he's not cooperating but it's my understanding the plea colloquy Ms. Duke outlined the facts that we could prove if he went to trial on the underlying bank robbery charge and he under oath admitted that's correct is my understanding of those facts. The allegation of Bobby Joe Harris about whether the 924(c) should be reinstated is a different issue.

MS. BYRD: Your Honor, do I get to rebut?

THE COURT: Yes, just a second. I want Mr. Harris to address another factor that you raised. Regarding the – now Mr. Johnson I believe is on that case, the Harris case.

MR. HARRIS: Yes, sir.

THE COURT: Whether there was a breach of the plea agreement to supply a release –

MR. HARRIS: That's the issue in Mr. Harris's sentencing.

THE COURT: – in Mr. Harris's case and it does not implicate in the slightest degree any testimony received during the course of the trial about who supplied the weapon and vehicle.

MR. HARRIS: No, sir. And it does not implicate the actual plea of guilty that Mr. Harris pled to and that Ms. Duke cited in the statement of facts. So that issue is not relevant.

THE COURT: Right. What is the relevance of that, Ms. Byrd?

MS. BYRD: Well, if he goes to trial on the weapons count, I'm not sure how he can proceed if he is – if on the defense of himself on the weapons, if he disavows that. I mean, if he goes to trial on that, he's going to have to address that issue but I'm saying, Your Honor, that I think that what he said or what the government said at the sentencing hearing, in light of the subsequent circumstance, I think casts doubt upon the veracity of attributing to him an affirmative statement as to Ms. Hourston's culpability in providing of that weapon and too, Your Honor, the Seventh Circuit case that the government has cited, there are – the facts are different. We actually did have a person in that case who actually did participate in the robbery who was there and present and an active participant. I do understand the definition of aiding and abetting but there are some differences in that case.

THE COURT: I'm going to deny your request that the court strike the five level enhancement. The court is persuaded that, using the preponderance of the evidence standard, the government has demonstrated that Ms. Hourston did supply the weapon, as well as the automobile, and in addition there is an enhancement due to her attempt to obstruct justice. So in arguing the

credibility factor, it's heavier on her side than it is on the other two. She misled the investigators about that vehicle and denied any involvement and yet later recanted.

The court is persuaded that even though she was acquitted on Count Two, which implicates the alleged brandishment and possession of the weapon, Count One as the government has argued, dealing with aiding and abetting, and given the testimony that she did supply the weapon and the vehicle, the court is persuaded that this enhancement is justified and that it has been established by a preponderance of the evidence. So the motion to strike will be overruled.

And regarding the issue confronting Mr. Harris, the court is not persuaded that this is relevant because the issue is about a plea agreement that he entered into, whether he breached that agreement and, of course, the court is persuaded that another issue is implicated. The record reflects that he did in fact sign that release agreement and there's an inference that he wanted to supply it but his attorney may have advised him not to supply it. So the issue is who is really responsible, the defendant or counsel. And those are some matters that will be taken up tomorrow, and the court is not persuaded that is relevant in dealing with the issue currently before the court.

ANALYSIS

First, the Eighth Circuit ruled in its June 10, 2005 order that Hourston "was not entitled to plain-error relief because she cannot show that her substantial rights were affected." Any issue raised on appeal "may not be re-litigated under § 2255. See English v. United States, 998 F.2d 609, 612-13 (8th Cir. 1993), *cert. denied*, 510 U.S. 1001, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993)." United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000). Likewise, on appeal, the Eighth Circuit found this Court was entitled to credit the co-defendant's testimony that Hourston obtained

the gun for the robbery and the jury's acquittal on the weapon charge was not dispositive as to whether a firearm enhancement was warranted using the preponderance of the evidence standard.

Even if these claims could be raised again in these collateral proceedings, the Court would find them to be without merit.

> In sentencing Roeles Ortiz, however, the district court could consider conduct underlying the gun-charge acquittals, provided that conduct has been proved by a preponderance of the evidence. See United States v. Watts, 519 U.S. 148, ---- - ----, 117 S.Ct. 633, 637-38, 136 L.Ed.2d 554 (1997) (*per curiam*); United States v. Roach, 28 F.3d 729, 735-36 (8th Cir. 1994) (citing United States v. Johnson, 962 F.2d 1308, 1313 (8th Cir. 1992) (stating preponderance standard)).

United States v. Ortiz, 125 F.3d 630, 634 (8th Cir. 1997).  See also, United States v. Roach, 28 F.3d 729, 736 (8th Cir. 1994).

> Arguments about the reliability of a witness are in reality an attack on the credibility of that testimony, and witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal. United States v. Behler, 14 F.3d 1264, 1273 (8th Cir. 1994), *cert. denied*, 513 U.S. 960, 115 S.Ct. 419, 130 L.Ed.2d 335 (1994).  See also Moss, 138 F.3d at 745.

United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002).  See also, United States v. Headbird, 461 F.3d 1074, 1080 (8th Cir. 2006).

> Sharpfish was sentenced on the basis of fact-based sentencing enhancements that were not tried to a jury.  Because Sharpfish did not object below to the constitutionality of the Sentencing Guidelines, we must consider whether the district court's application of enhancements under the sentencing guidelines and its application of the guidelines themselves as mandatory, rather than advisory, constitute plain error.  In order to conclude that the district court's use of the guidelines in sentencing constituted plain error, we would have to determine that there is a reasonable probability that Sharpfish would have received a more favorable sentence but for the error.  United States v. Pirani, 406 F.3d 543, 2005 WL 1039976 (8th Cir. Apr. 29, 2005) (*en banc*).
>
> We have reviewed the record carefully.  The district court catalogued the various factors relevant to Sharpfish's sentence and commented: "These are horrible crimes." The court stated, "This is not the worst case of force that I've seen, of course, by any

> means. And as Mr. Albright argued, it's somewhat of a close issue. By close, again I mean, it's not the worst case of force that I've ever seen in one of these type cases." The court sentenced Sharpfish to the low end of the guidelines range. Pirani held that sentencing at the low end of the range does not show a reasonable probability that the court would have imposed a more lenient sentence had it known it could do so. Id. at 12. Our review of the district court record does not reveal any significant evidence that the district court would have imposed a more lenient sentence if it had considered the guidelines advisory rather than mandatory. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." Id. at 13 (quoting United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005), *cert. denied* --- U.S. ----, 125 S.Ct. 2935, 162 L.Ed.2d 866, 73 USLW 3531 (Jun. 20, 2005)). Consequently, we cannot say that the sentence imposed was the product of plain error.

United States v. Sharpfish, 408 F.3d 507, 512 (8th Cir. 2005).[8]

The government correctly argues that Hourston did not raise the claim that she should have been awarded a downward departure for a minor role and so this type of claim cannot be presented in a §2255 motion. In the case of Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995), the appellate court explained:

> Auman's Sentencing Guideline claim is not properly brought under section 2255, but should have been raised on direct appeal. See United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). While section 2255 does provide relief for cases in which "the sentence was in excess of the maximum authorized by law," this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.

Moreover, at sentencing, the Court specifically found that Hourston supplied the weapon and automobile and then attempted to obstruct justice. The Court's findings plainly demonstrate that Hourston's role in the bank robbery was not minor.

---

[8] Hourston's sentence of 87 months was the low end of the guidelines range.

The parties are in agreement as to the standard to be applied in addressing an ineffective assistance of counsel claim.

> Under the Supreme Court's well-established standard in Strickland v. Washington, a convicted defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 693, 695, 104 S.Ct. 2052.

United States v. Watkins, ____ F3d. _____, 2007 WL 1531131, *3 (8th Cir. 2007).

The Court agrees with the government that Hourston's counsel was not ineffective in failing to raise a Booker issue at sentencing. As pointed out, Booker was not decided until approximately eighteen months following the imposition of Hourston's sentence. However, the objections to the final presentence report and the sentencing transcript clearly show that Hourston's counsel did argue against the firearm enhancement as well as questioning the credibility of the co-defendant as the basis for the imposition of the 5-level increase.

The transcript further establishes that a plea offer was made by the government, but Hourston firmly refused the offer on the record. Hourston's counsel did request grand jury testimony and other physical evidence in a discovery motion filed on October 29, 2002, which the government opposed. By order filed on November 18, 2002, the Court denied that portion of the motion finding that the information sought was outside the scope of the Jencks Act. In sum, the Court cannot find that

Hourston's counsel was deficient as alleged by Hourston in representing her through pretrial, the trial, sentencing, and on appeal.

Accordingly, Hourston's March 1st motion (#147) to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 is hereby denied.

IT IS SO ORDERED this 5th day of July, 2007.

_____
UNITED STATES DISTRICT JUDGE